```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
      v.                        )    No. 4:08CR619 ERW
                                )                  (FRB)
KOREY PARKER,                   )
                                )
            Defendant.          )
```

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant filed Motions To Suppress Evidence (Docket No. 19) and to Suppress Statements (Docket No. 20). Testimony and evidence was adduced on the motions at a hearing before the undersigned on December 11, 2008. From the testimony and evidence adduced at the hearing the undersigned makes the following findings of fact and conclusions of law:

Findings of Fact

On September 24, 2008, Officers Robert Singh and Michael Betz of the St. Louis, Missouri, Metropolitan Police Department were on patrol in an area of the city known as the Carondelet Park neighborhood. The officers were a part of a unit that is assigned to patrol in high crime areas. They had been assigned to patrol in that area that day because numerous burglaries, car break-ins, and other violent crimes had been occurring in the area. The officers were patrolling in an unmarked police car. They were not in

uniform, but were wearing clothing that identified them as police officers.

At about noon on that date the officers observed a tan colored Oldsmobile automobile that drew their attention. They noticed the vehicle because it was driving very slowly up and down various streets in the neighborhood. The car appeared to be driven by a female with a male passenger in the front seat. The car would stop and pull over occasionally in front of a residence. At one point the vehicle drove into an alleyway and stopped and sat for a period. During the occasions when the vehicle stopped, no one got out of the vehicle and no one approached the vehicle to make contact with the occupants. In view of the recent burglaries and car break-ins in the area and the manner in which the car was being driven the officers believed that the occupants might be "casing" houses and cars, that is, looking for a house or car to break into, and they continued to follow and conduct surveillance of the car. While doing so they ran a license check of the vehicle through the police dispatcher, and the dispatcher reported back to them that the license plate number on the vehicle was not registered to that vehicle, but to a different vehicle.[1]

---

[1]Officer Singh testified that it was later determined that the license plate affixed to the Oldsmobile was properly registered to that vehicle and that either he had recited the wrong number to the dispatcher to be checked or that the dispatcher had made an error in the license number in making the check.

At one point the car came to a stop on Bates Avenue. The car remained stopped and other cars ended up having to stop behind the Oldsmobile because they were unable to drive around it, thus impeding the flow of traffic, a traffic violation. Based on all of these things the officers decided to stop the vehicle to conduct further investigation. They pulled their unmarked police car up to and behind the stopped Oldsmobile. They got out of the police car and approached the driver of the vehicle and told her why they had stopped her, that is, that her vehicle was impeding the flow of traffic and of the license plate not being registered to the vehicle. The officers obtained identification documents from the driver and the passenger. The passenger was identified as Korey Parker, the defendant here.[2] The officers then ran record checks on both individuals to determine if there were any outstanding warrants for their arrest. They learned that there were none, but it was reported that Korey Parker was on supervision for a prior federal criminal conviction. As the officers were running the record checks the occupants of the Oldsmobile remained in the vehicle. The officers stood behind the Oldsmobile and continued to observe the occupants as the record check was being made. While doing so Officer Singh noticed that Korey Parker was looking back toward the officers. He also noticed the driver and passenger at one point to lean forward and bend down toward each other, as if

---

[2] At some point the officers discovered a third person in the car, a passenger in the rear seat. It was learned that this was the eleven year old daughter of Ms. Reeves and Parker.

huddled. It appeared to Officer Singh that the occupants might be trying to conceal something.

The officers then approached the occupants of the Oldsmobile and asked them to step out of their car, which they did. Officer Singh spoke with Korey Parker. Parker seemed very nervous, especially in discussing the fact that he was on supervision. Officer Singh asked if he could pat Parker down to see if he had any weapons. Parker agreed. Officer Singh then placed handcuffs on Parker. Because of Parker's nervous demeanor and his earlier furtive movements in the car, Officer Singh was concerned that Parker may have been attempting to conceal a weapon in the car.

In the meanwhile, Officer Betz was speaking with the driver of the car, identified as Annette Reeves. She told Officer Betz that she and Parker were in the neighborhood looking for apartments for rent. Officer Betz asked Ms. Reeves if he could search her purse and Reeves agreed. Officer Betz opened the purse and saw a .380 caliber semi-automatic handgun which was then seized. Ms. Reeves told the officers that the gun belonged to her boyfriend Korey Parker.

Upon being so advised Officer Singh placed Parker under arrest and then advised Parker of his <u>Miranda</u> rights. Parker acknowledged that he understood his rights. Parker told Officer Singh that he had the weapon for his own protection because he was having trouble with some people in the neighborhood where he lived.

Ms. Reeves and Parker were then transported to the police

huddled. It appeared to Officer Singh that the occupants might be trying to conceal something.

The officers then approached the occupants of the Oldsmobile and asked them to step out of their car, which they did. Officer Singh spoke with Korey Parker. Parker seemed very nervous, especially in discussing the fact that he was on supervision. Officer Singh asked if he could pat Parker down to see if he had any weapons. Parker agreed. Officer Singh then placed handcuffs on Parker. Because of Parker's nervous demeanor and his earlier furtive movements in the car, Officer Singh was concerned that Parker may have been attempting to conceal a weapon in the car.

In the meanwhile, Officer Betz was speaking with the driver of the car, identified as Annette Reeves. She told Officer Betz that she and Parker were in the neighborhood looking for apartments for rent. Officer Betz asked Ms. Reeves if he could search her purse and Reeves agreed. Officer Betz opened the purse and saw a .380 caliber semi-automatic handgun which was then seized. Ms. Reeves told the officers that the gun belonged to her boyfriend Korey Parker.

Upon being so advised Officer Singh placed Parker under arrest and then advised Parker of his <u>Miranda</u> rights. Parker acknowledged that he understood his rights. Parker told Officer Singh that he had the weapon for his own protection because he was having trouble with some people in the neighborhood where he lived.

Ms. Reeves and Parker were then transported to the police

huddled. It appeared to Officer Singh that the occupants might be trying to conceal something.

The officers then approached the occupants of the Oldsmobile and asked them to step out of their car, which they did. Officer Singh spoke with Korey Parker. Parker seemed very nervous, especially in discussing the fact that he was on supervision. Officer Singh asked if he could pat Parker down to see if he had any weapons. Parker agreed. Officer Singh then placed handcuffs on Parker. Because of Parker's nervous demeanor and his earlier furtive movements in the car, Officer Singh was concerned that Parker may have been attempting to conceal a weapon in the car.

In the meanwhile, Officer Betz was speaking with the driver of the car, identified as Annette Reeves. She told Officer Betz that she and Parker were in the neighborhood looking for apartments for rent. Officer Betz asked Ms. Reeves if he could search her purse and Reeves agreed. Officer Betz opened the purse and saw a .380 caliber semi-automatic handgun which was then seized. Ms. Reeves told the officers that the gun belonged to her boyfriend Korey Parker.

Upon being so advised Officer Singh placed Parker under arrest and then advised Parker of his <u>Miranda</u> rights. Parker acknowledged that he understood his rights. Parker told Officer Singh that he had the weapon for his own protection because he was having trouble with some people in the neighborhood where he lived.

Ms. Reeves and Parker were then transported to the police

station.  At the station Parker was again advised of his Miranda rights.  This was done through the use of a written form.  Officer Singh read the rights to Parker from the form, specifically advising Parker that he had the right to remain silent; that anything he said could be used against him; that he had the right to consult with counsel and to have counsel present with him during questioning if he wished; that counsel would be appointed for him without cost to him if he wished; and that if he chose to answer questions he could stop answering at any time.[3]  Parker initialed each of the rights on the form as they were read to him and signed the form, including that portion stating that he understood these rights, wished to waive the rights and to make a statement.  Parker then handwrote a statement on the form stating in sum that he had the gun for his own protection and that he gave it to Ms. Reeves to put in her purse when they were stopped by the police.  Parker then signed that portion of the form stating that his statement was voluntary, and made without threats, promises or other coercion.  (See Government's Exhibit A, attached as an exhibit to government's Response [to defendant's motions] filed on December 11, 2008, Docket No. 27).

Ms. Reeves also made a written statement at the police station.

---

[3]Officer Singh testified that these were the same rights of which he advised Parker at the time of the on scene arrest of Parker.

Discussion
-----

As grounds to suppress the evidence seized from him the defendant asserts in his motion that the officers had no grounds to stop him or to conduct any search of him.

The officers in this case stopped the vehicle in which the defendant was a passenger after observing two traffic violations, namely, impeding the flow of traffic. (See R.S.Mo. § 300.440) and license plate not registered to the vehicle that it was on (See R.S.Mo. § 301.130.7). Observation of a traffic violation, however minor, provides probable cause for a stop of the vehicle. United States v. Linkous, 285 F.3d 716, 719 (8th Cir. 2002). "This is true even if the traffic stop is a pretext for other investigation." Id.; Whren v. United States, 517 U.S. 806, 812-13 (1996). The traffic stop here was valid even though based in part on the mistaken, but objectively reasonable, belief that the license plate was not properly registered to the vehicle. United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000); United States v. Clayborn, 339 F.3d 700, 701 (8th Cir. 2003), cert. denied, 541 U.S. 1019 (2004).

During a traffic stop, an officer may ask the driver for their operator's license and vehicle registration. United States v. Ramos, 42 F.3d 1160, 1163 (8th Cir. 1994), cert. denied, 514 U.S. 1134 (1995). The officers may also ask for identification documents from a passenger in the vehicle. United States v. Slater, 411 F.3d 1003, 1004-05 (8th Cir. 2005). If during a lawful

traffic stop, an officer's suspicions are aroused that the occupants of a vehicle may be engaged in other criminal activity, the officer may expand the scope of the stop and ask questions unrelated to traffic offense. United States v. Allegree, 175 F.3d 648, 650 (8th Cir. 1999).

As the officers were running record checks of the driver and passenger, Officer Singh noticed that the occupants appeared to lean toward each other and forward, as if to conceal something. He also noticed that the passenger, Parker was looking back toward the officers as this was occurring. Such furtive movements can reasonably lead an officer to believe that the occupants of the vehicle might be armed. See e.g. United States v. Evans, 994 F.2d 317, 321 (8th Cir. 1993); United States v. Woodall, 938 F.2d 834, 837 (8th Cir. 1991); United States v. Malone, 49 F.3d 393, 397 (8th Cir.), cert. denied, 516 U.S. 877 (1995). Further, Parker became visibly nervous when Officer Singh discussed with Parker the fact that the record check revealed that Parker was on supervision for a prior federal conviction. All of these observations, coupled with the unusual driving pattern observed before the stop, and the rash of criminal activity in the area gave Officer Singh a reasonable belief that the occupants of the vehicle might be armed. "The driver of a car and his or her passengers can be physically searched pursuant to a stop for traffic violations if an officer has a reasonable suspicion that they might be carrying weapons." United States v. Woodall, 938 F.2d 834, 837 (8th Cir. 1991); United

States v. Davis, 457 F.3d 817, 822 (8th Cir. 2006). Having such concerns Officer Betz asked the driver if he could look into her purse. She agreed. When Officer Betz looked into the purse he found and seized a handgun. The defendant has no standing to contest the search to the purse, conducted with the apparent voluntary consent of Ms. Reeves, or the seizure of the weapon therefrom. Rawlings v. Kentucky, 448 U.S. 98 (1980); Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

Upon inquiry by Officer Betz, Ms. Reeves stated that the gun belonged to Parker. Officer Betz related this information to Officer Singh and Officer Singh then placed the defendant under arrest for possession of the firearm. Thereafter, the defendant made incriminating statements to Officer Singh regarding the weapon found in Ms. Reeves' purse.

As grounds to suppress the statements made by him to Officer Singh the defendant avers in his motion that the statements were not voluntary, were a direct result of his unlawful detention and arrest; and that the defendant was not advised of and did not waive his rights before questioning as required by [Miranda v. Arizona, 384 U.S. 436 (1966)].

After placing the defendant under arrest Officer Singh advised the defendant of his rights, as required by Miranda v. Arizona, 384 U.S. 436 (1966), and specifically that the defendant had the right to remain silent; that anything he said could be used against him; that he had the right to an attorney and to have an

attorney present during questioning if he wished; and that if he could not afford an attorney one would be appointed for him before questioning if he wished.  After being so advised the defendant said that he understood these rights and then told Officer Singh that he had the weapon in his possession for his own protection because he was having trouble with someone in the neighborhood where he lived.  These circumstances demonstrate a voluntary, knowing and intelligent waiver by the defendant of his Miranda rights.  United States v. Ingram, 839 F.2d 1327, 1329 (8th Cir. 1988).

The defendant was thereafter transported to the police station where he was again advised of his Miranda rights.  The defendant acknowledged in writing that he had been advised of and understood these rights, was willing to make a statement, and then wrote out in his own hand a statement regarding his possession of the firearm, reiterating what he had earlier told Officer Singh at the scene of his arrest.  He further acknowledged in writing that no threats, promises or other coercion had been used against him by the officers in order to induce him to make any statement.  This is strong evidence of defendant's understanding and voluntary, knowing and intelligent waiver of his Miranda rights.  North Carolina v. Butler, 441 U.S. 369, 379 (1979).

The defendant claims that his statements were not voluntary.  This is contradicted by his written acknowledgment to the contrary, and no evidence was adduced at the hearing which

would demonstrate that the waiver or statements were the result of any threats, promises or other coercion by the officers. The defendant's waiver of rights and statements were therefore voluntary. Colorado v. Connelly, 479 U.S. 157 (1986).

Finally, the defendant claims that his statements were the product of his unlawful detention and arrest. As discussed above, the stop and detention of the defendant during the traffic stop was lawful. The subsequent arrest of the defendant was lawful, even though made without a warrant, because made upon probable cause. United States v. Watson, 423 U.S. 411 (1976); Gerstein v. Pugh, 420 U.S. 103 (1975). The discovery of the firearm in the purse, Ms. Reeves' statement that the gun belonged to Parker, coupled with the other observations by the officers during the traffic stop provided probable cause for the arrest of the defendant. Beck v. Ohio, 379 U.S. 89, 91 (1964). See R.S.Mo. § 571.030.1(1).[4]

---

[4] In paragraph 8 of his Motion To Suppress Evidence the defendant avers that after he was placed under arrest "Defendant's front pocket was searched; wherein officers located and seized a one dollar bill containing numerous off-white, rock-like chunks, which the officers believed to be crack cocaine." No evidence was adduced at the hearing regarding any such evidence or seizure, either by the government or the defendant. Nor is any such evidence or seizure mentioned in the government's response to the defendant's Motion To Suppress Evidence. The defendant is not charged in the pending indictment with any drug offense. If in fact the defendant's pocket was searched and cocaine seized therefrom following his arrest as averred in the motion, the undersigned finds that the cocaine was lawfully found and seized during a search conducted incident to the lawful arrest of the defendant. United States v. Robinson, 414 U.S. 218, 235 (1973).

<u>Conclusion</u>

For all of the foregoing reasons the defendant's Motion To Suppress Evidence (Docket No. 19) and Motion To Suppress Statements (Docket No. 20) should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant Korey Parker's Motion To Suppress Evidence (Docket No. 19); and Motion To Suppress Statements (Docket No. 20) be denied.

The parties are advised that they have until **January 23, 2009,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

*[signature: Frederick R. Buckles]*
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of January, 2009.