UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:08CR00619 ERW |
| ) | |
| KOREY PARKER, ) | |
| ) | |
| Defendant(s). ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Frederick R. Buckles [doc. #30], pursuant to 28 U.S.C. § 636(b).

Defendant Korey Parker ("Defendant") filed a Motion to Suppress Evidence [doc. #19] and a Motion to Suppress Statements [doc. #20]. The Report and Recommendation of Magistrate Judge Buckles concluded that both of these Motions should be denied. Defendant filed Objections to the Report and Recommendation. In addition to objections regarding the Magistrate Judge's Findings of Fact, Defendant specifically objected to several of the legal conclusions made by the Magistrate Judge. The Court concludes that the Magistrate Judge's findings were correct, and therefore adopts the Magistrate Judge's findings of facts and conclusions of law.

## **I.    LEGAL STANDARD**

"[W]hen a party objects to the report and recommendation of a magistrate judge concerning a dispositive matter, '[a] judge of the court shall make a de novo review determination of those portions of the report or specified proposed findings or recommendations to which

objection is made. *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (*citing* 28 U.S.C. § 636 (b)(1)).[1]  The district court has wide discretion to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. FINDINGS OF FACT

At approximately 12:00 p.m. on September 24, 2008, Officers Robert Singh and Michael Betz of the St. Louis, Missouri, Metropolitan Police Department were on patrol in a neighborhood near Carondelet Park in St. Louis. The area had experienced an increase in the number of burglaries, car break-ins, and other violent crimes, so the Officers had been assigned there as part of the Crime Suppression Unit, a unit assigned to patrol in high crime areas. They were patrolling the area in an unmarked vehicle, although they were wearing clothing that identified them as police.

The Officers observed a tan Oldsmobile driving at a very slow rate of speed through the neighborhood. The driver of the car would occasionally stop in front of a residence. At one point, the car pulled into an alley and stopped, although no one exited or entered the vehicle. Based on the strange driving and the history of criminal activity in the area, the Officers were concerned that the occupants of the vehicle might be "casing" the area, looking for houses or cars to break into or for people to rob. The Officers ran a license check of the plates on the Oldsmobile and were informed by the dispatcher that the license plate number was registered to a

---

[1] 28 U.S.C. § 636(b)(1)(B) provides that "a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . . ." The statute further provides that each party may file written objections within ten days of being served with a copy of the magistrate judge's report and recommendation. *Id.* § 636(b)(1).

different vehicle.[2] After watching the car for a period of time, the Officers noted that it stopped in the middle of the street, where it was impeding the flow of traffic, a violation of Mo. Rev. Stat. § 300.440. On the basis of this traffic violation and the belief that the car had improper license plates, the Officers stopped the vehicle.

Upon stopping the vehicle, the Officers approached it and advised Arnetta Reeves, the driver of the vehicle, of the reason for the traffic stop. The Officers obtained identification from both Ms. Reeves and Defendant[3] and then did a computer check to determine if there was a warrant out for either person's arrest. There was no outstanding warrant on either Ms. Reeves or Defendant, but the Officers did discover that Defendant was on supervision for a prior federal criminal conviction. While doing the computer check, the Officers noticed that Defendant was looking back at them and that Ms. Reeves and Defendant were huddled together in the car, in a manner that looked like they were trying to conceal something.

The Officers returned and asked the occupants to step out of the vehicle. Officer Singh talked with Defendant, who appeared very nervous, especially when asked about being on supervision. Concerned for his safety, and that of Officer Betz, Officer Singh requested and received permission to conduct a pat down search of Defendant's person. Officer Singh did not find any weapons on Defendant's person, but he was concerned that Defendant and Ms. Reeves had concealed a weapon somewhere, so he placed Defendant in handcuffs while Officer Betz

---

[2] It was later discovered that the license plate number was actually registered to the Oldsmobile in question. At the time of the incident, however, the Officers mistakenly believed that the registration number did not match, due to error on the part of either the Officers or the dispatcher.

[3] In addition to the Defendant and Ms. Reeves, there was a third passenger in the vehicle, their eleven year-old daughter.

3

spoke with Ms. Reeves. Ms. Reeves informed Officer Betz that she and Defendant were in the area looking for an apartment to rent. She gave the Officer permission to search her purse, and upon doing so, Officer Betz discovered a .380 caliber semi-automatic handgun. Ms. Reeves told the Officers that the gun belonged to Defendant.

The Officers advised Defendant of his Miranda rights, which Defendant acknowledged, and they placed him under arrest for possession of a firearm. Defendant told the Officers that he had the gun because he was having problems with someone in his neighborhood and he needed it for protection. The Officers then transported both Defendant and Ms. Reeves to the police station. Defendant was again advised of his Miranda rights, this time through the use of a written form. Officer Singh went over each of the Miranda rights on the form with Defendant, and then Defendant initialed each part, signaling that he understood the rights and wished to waive them and make a statement. Defendant's handwritten statement explained that he and Ms. Reeves were looking for an apartment in the Carondelet Park neighborhood because they were being harassed and threatened in their current neighborhood. He also stated that he gave the weapon to Ms. Reeves to put in her purse when they were stopped. Defendant signed the form, noting that the statement was made freely and without coercion. In addition, Officer Singh signed the form as the interviewer and Officer Betz signed it as a witness.

### III. DISCUSSION

#### A. MOTION TO SUPPRESS EVIDENCE

In his Motion to Suppress Evidence, Defendant requests that the Court "suppress any and all items seized during the traffic stop of September 24, 2008." He argues that the stop, detention, search, and seizure of evidence violated his Constitutional rights. Magistrate Judge

Buckles disagreed, finding that the Officers acted lawfully and that the evidence was properly seized.

"Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (en banc). "The observation of even a minor violation provides probable cause for a traffic stop, even if the traffic violation is a pretext for other investigation." *United States v. Payne*, 534 F.3d 948, 951 (8th Cir. 2008). The Officers had probable cause to make a traffic stop because they observed two traffic violations: impeding the flow of traffic, in violation of Mo. Rev. Stat. § 300.440, and having a license plate that was registered to another vehicle, in violation of Mo. Rev. Stat. § 301.130. Probable cause exists as a result of these violations even though the Officers were also concerned that the passengers in the vehicle might be "casing" houses to rob. Further, although it was eventually discovered that the license plate was actually registered to the vehicle in question, the mistake was immaterial because the Officers could have validly made the stop on the basis of the impeding the flow of traffic violation alone. Further, "the validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in [cases where officers make mistakes,] the question is simply whether the mistake, whether one of law or of fact, was an objectively reasonable one." *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005). There is no evidence that the mistaken communication on the part of either the Officers or the dispatcher was anything more than a reasonable, honest mistake. Thus, the Court concludes that the Officers had probable cause to make the initial traffic stop.

Once a stop is made, the officer is only permitted to conduct an investigation that is "'reasonably related in scope to the circumstances which justified the interference in the first

place.'" *United States v. Cummins*, 920 F.2d 498, 592 (8th Cir. 1990) (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). This means that the officer is limited to tasks such as examining the driver's license and registration, and asking about the driver's purpose and destination. The officer may also perform these tasks with respect to other passengers in the car. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008). The stop should only last "'as long as reasonably necessary to conduct these activities and to issue a warning or citation.'" *United States v. Nassar*, 546 F.3d 569, 570 (8th Cir. 2008) (quoting *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001)). If the activities conducted during the stop go beyond these activities, however, the officer must have "reasonable, articulate suspicion." *Id.*

In this case, the Officers' initial actions were well-within the scope of permitted activities: after approaching the vehicle, they obtained identification from both of the occupants of the vehicle. While the Officers were running record checks, they observed that Defendant looked back at them several times and that he was huddled together with Ms. Reeves in the car, in a manner that looked like they were trying to conceal something. The Officers returned to the vehicle and spoke with Defendant, noting that he became very nervous when asked about being on supervision for a previous federal criminal conviction. The strange movements in the car, combined with Defendant's nervousness, were sufficient to give the Officers a reasonable suspicion that the vehicle's occupants were attempting to hide something, particularly a weapon of some sort. *See, e.g.*, *United States v. Malone*, 49 F.3d 393, 397 (8th Cir. 1995) (reasonable suspicion based on suspicious movements and knife found in pat down); *United States v. Woodall*, 938 F.2d 834, 837 (8th Cir. 1991) (reasonable suspicion based on movements to floorboard and suspicion of drug manufacturing); *State v. Cromwell*, 509 S.W.2d 144, 147 (Mo.

6

Ct. App. 1974) (reasonable suspicion based on observed movements and cartridges found on appellant's person). Because of this reasonable suspicion, the Officers were justified in expanding the scope of the investigation beyond the initial traffic violations that were the basis of the stop.

An officer is "justified in making a limited, warrantless search for the protection of himself or others nearby in order to discover weapons if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous." *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1967)). The Court has already established that the Officers had reasonable suspicion to believe that the occupants of the vehicle might be carrying or might have hidden a weapon, thus, Officer Singh had authority to conduct the pat-down search of Defendant in order to protect both himself and Officer Betz.

Additionally, the search of Ms. Reeves' purse and the subsequent retrieval of the firearm was lawful. Not only did the Officers have a reasonable suspicion that she might be carrying a weapon in her purse, but they also asked for, and obtained, Ms. Reeves' consent to perform the search. Further, as a result of Ms. Reeves' voluntary consent, Defendant does not have standing to contest the search because he did not have a legitimate expectation of privacy in Ms. Reeves' purse. *See Rawlings v. Kentucky*, 448 U.S. 98, 104-05 (1980).

Thus, the evidence obtained by the Officers during the traffic stop on September 24, 2008 was lawfully seized and will not be suppressed.[4]

---

[4] In Defendant's Motion to Suppress Evidence, he specifies two items seized during the traffic stop that he seeks to have the Court suppress: the semi-automatic pistol and "a one dollar bill containing numerous off-white, rock-like chunks, which the officers believed to be crack cocaine." While the semi-automatic pistol is clearly central to this criminal case, no mention of the dollar bill was made in either the evidentiary hearing or in the United States' Motion Response and Memorandum. Further, Defendant is not facing drug-related charges in the pending indictment. Thus, it does not appear that the Government is seeking to admit this evidence.

7

**B.     MOTION TO SUPPRESS STATEMENTS**

In his Motion to Suppress Statements, Defendant requests that the Court "suppress any and all statements, oral, written, videotaped, or otherwise recorded, which the government intends to use in evidence against Defendant." He argues that his statements were involuntary, were taken in violation of his Miranda rights, and were a direct result of his illegal detention. Magistrate Judge Buckles disagreed, finding that there was no evidence of coercion, that Defendant properly waived his Miranda rights, and that the arrest of Defendant was lawful.

Defendant has failed to provide supporting evidence for his claim that the statements he made were not voluntary. He merely makes an unsubstantiated statement in his Motion to Suppress Statements that "[t]he behavior of the government agents threatened Defendant Parker in such a manner as to overbear him as well as to coerce him into cooperating with government officials." Further, when Defendant made his written statement at the police station, he signed a statement acknowledging that the statement was made voluntarily, and without coercion. Due to the apparent lack of evidence supporting Defendant's coercion argument, the Court must reject the argument and, thus, hold that his statements were made voluntarily. *See United States v. Walker*, 518 F.3d 983, 985 (8th Cir. 2008).

---

Regardless, the evidence was lawfully seized from Defendant. Defendant states that the dollar bill was found in his front pocket by the Officers while searching his person after he was placed under arrest. "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *United States v. Robinson*, 414 U.S. 218, 235 (1973). As the Court concludes in the subsequent section, the arrest of Defendant was lawful; thus, the search performed by the Officers incident to that arrest was also lawful and any evidence seized was properly obtained.

8

Additionally, Defendant made a voluntary and knowing waiver of his Miranda rights twice throughout the course of events. A person can waive his or her Miranda rights, "[b]ut the waiver must be voluntary, knowing, and intelligent, that is, it must be 'the product of a free and deliberate choice rather than intimidation, coercion, or deception.'" *United States v. Phillips*, 506 F.3d 685, 687 (8th Cir. 2007) (quoting *United States v. Jones*, 23 F.3d 1307, 1313 (8th Cir. 1994); *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). In this case, when Ms. Reeves told the Officers that the gun belonged to Defendant, they placed him under arrest and advised him of his rights. Defendant acknowledged his rights, but nevertheless went on to make an oral statement regarding his use of the gun for protection. As previously established, there is no evidence of intimidation, coercion or deception of any sort, thus, it appears that Defendant made a voluntary and knowing waiver of his Miranda rights immediately after his arrest.

After placing Defendant under arrest, the Officers transported him to the police station, where they again advised him of his Miranda rights. This time, the Officers used a written form, going over each of the rights with Defendant as he initialed next to them, signaling his understanding and his wish to waive the rights and make a written statement. He also signed the form and acknowledged that he had done so without threat or coercion. Thus, it appears that Defendant made a voluntary and knowing waiver of his Miranda rights at the police station, as well. Because Defendant twice validly waived his Miranda rights, his argument that the statements were taken in violation of his Miranda rights must fail.

Finally, Defendant argues that the statements at issue were the product of an unlawful arrest and detention. Although the Officers did not have a warrant for Defendant's arrest, the arrest was lawful because they had probable cause to believe that an offense was being or had

been committed. "Probable cause is determined from 'the totality of the circumstances as set forth in the information available to the arresting officers at the time of the arrest.'" *United States v. Houston*, 548 F.3d 1151, 1154 (8th Cir. 2008) (quoting *United States v. Adams*, 346 F.3d 1165, 1169 (8th Cir. 2003)). In this case, the Officers observed suspicious behavior, found a gun in Ms. Reeves' purse, and were told by Ms. Reeves that the gun belonged to Defendant, whom the Officers knew to be on supervision for a prior federal offense. These facts together gave the officers probable cause to believe that Defendant was committing an offense (felon in possession of a firearm). Thus, the arrest and subsequent detention of Defendant was lawful.

## IV. CONCLUSION

The Court concludes that the evidence seized during the September 24, 2008 traffic stop was lawfully obtained by the Officers. Further, the Court concludes that the statements made by Defendant are admissible, as there is no evidence of coercion, Defendant waived his Miranda rights, and the arrest of Defendant was lawful.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Korey Parker's Motion to Suppress Evidence [doc. #19] and Defendant Korey Parker's Motion to Suppress Statements [doc. #20] are **DENIED**.

Dated this 2nd Day of February, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE